IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JUAN GARCIA,                    ) | |
|                                 ) | |
|           Plaintiff,            ) | |
|                                 ) | |
| vs.                             ) | Case No. 15-cv-1369-MJR-SCW |
|                                 ) | |
| WEXFORD HEALTH SOURCES, INC.,   ) | |
| JOHN TROST, M.D.,               ) | |
| MIKE MOLDENHAUER,               ) | |
| AIMEE LANG,                     ) | |
| HECTOR GARCIA, M.D., and        ) | |
| ROBERT SHEARING, M.D.,          ) | |
|                                 ) | |
|           Defendants.           ) | |

## MEMORANDUM AND ORDER

REAGAN, Chief District Judge:

### I.   INTRODUCTION

While incarcerated at Menard Correctional Center in December 2015, Juan Garcia

filed the above-captioned lawsuit under 42 U.S.C. 1983.   Garcia (Plaintiff) named five

healthcare professionals (three doctors, a nurse, and a nurse practitioner) plus the

private corporation that contracts with the Illinois Department of Corrections to provide

medical care to Illinois inmates (Wexford Health Sources, Inc.).   The complaint alleges

that Defendants ignored Plaintiff's medical needs arising from cysts and growths on his

testicles.   On threshold review under 28 U.S.C. 1915A, the undersigned found the

complaint stated a claim for deliberate indifference to serious medical needs in violation

of the Eighth Amendment to the United States Constitution (*see* Doc. 6).

The case comes now before the Court on a motion for summary judgment and supporting memorandum (Docs. 34-35) filed by five of the six named Defendants – (1) Mike Moldenhauer, (2) Robert Shearing, M.D., (3) John Trost, M.D., (4) Hector Garcia, M.D., and (6) Wexford Health Sources, Inc. (Wexford).[1]  Where helpful herein, the Court refers to these six Defendants collectively as the "Wexford Defendants."   The motion and memo assert that Plaintiff failed to exhaust his administrative remedies as to four of five Wexford Defendants – all of them *except* Dr. Trost (*see* Doc. 34, p. 1) – as required under the Prison Litigation Reform Act.[2]  Plaintiff responded to the motion (Doc. 37).   The deadline for a reply has passed, the motion is ripe for disposition.

In his response, Plaintiff concedes that he failed to exhaust his administrative remedies as to Defendants Moldenhauer, Shearing, and Garcia (Doc. 37, p. 2).   Plaintiff asks that the Court dismiss those Defendants (*id.*).   The Court **DISMISSES without prejudice** Defendants Moldenhauer, Shearing, and Garcia.   The question is whether Plaintiff exhausted his administrative remedies as to Defendant Wexford.   The Court finds that Plaintiff did exhaust as to Wexford and thus **GRANTS in part and DENIES in part** the summary judgment motion (Doc. 34), for the reasons explained below.

---

[1]      Answers and jury demands herein supplied the full/correct names of Defendants identified in the complaint as Trost, Moldenhauer, Garcia, and Shearing – John Trost, M.D., Mike Moldenhauer, Hector Garcia, M.D., and Robert Shearing, M.D.   The Clerk's Office shall correct the docket sheet accordingly.

[2]      Defendants concede that Plaintiff exhausted as to Dr. Trost ( Doc. 35, p. 8).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Though Plaintiff filed multiple grievances relating to the matter at issue in this suit, one grievance (the August 18, 2014 grievance) is clearly dispositive, and the Court need not discuss any others.   On August 18, 2014, Plaintiff filed a grievance complaining of Dr. Trost and Wexford (Doc. 35-5).   Plaintiff asserted that Trost and Wexford violated his Eighth Amendment rights when they "acted with deliberate indifference when they denied [his] request to have … cysts surgically removed from [his] testicles" (*Id.* at 1).   He claimed that he was suffering from pain due to the cysts and that he had reported the pain to the Menard healthcare unit as early as November 2013 (*id.*).   Plaintiff further grieved that he had requested to have his cysts surgically removed on July 24, 2014, and his request was denied by Trost and Wexford (*id.* at 2). He wrote that Trost and Wexford were "forcing [him] to live with … constant pain and are refusing to properly treat [his] mass" (*id.*).   Among the relief he requested was to have his cysts surgically removed, as well as to be provided with monetary compensation (*id.* at 1).

Plaintiff's counselor received the grievance on September 6, 2014 and penned a response on September 20, 2014 (*id.*).   The response provided a brief summary of Plaintiff's written care and indicated that Plaintiff would be seen by Dr. Trost for further care (*id.*).   Plaintiff sent his grievance to the grievance officer, who responded on January 22, 2015 (Doc. 35-6).   The grievance officer found Plaintiff's grievance to be moot, due to recent treatment (*id.*).   The chief administrative officer concurred with the

grievance officer on January 30, 2015, and Plaintiff appealed his grievance to the Administrative Review Board (ARB) on February 5, 2015 (*id.*).   The ARB responded on September 21, 2015, indicating that Menard had properly addressed Plaintiff's grievance (Doc. 35-7).   Plaintiff filed this lawsuit on December 15, 2015.

In the January 2016 merits review Order, the undersigned found that Plaintiff alleged, *inter alia*, that Defendant Wexford denied his requests for surgical removal of his cysts due to policies maintained by Wexford that place costs as a priority over patient care (*id.* at 3).   The Court found that these allegations sufficiently stated a claim for an Eighth Amendment violation against Wexford (*Id.* at 5).

### III.    APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment Motions

Summary judgment is proper only if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law.   *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011),** *citing* FED. R. CIV. P. 56(a).   The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact.   *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**   After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."   *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986),** *quoting* FED R. CIV. P. 56(e)(2).

A fact is material if it is outcome determinative under applicable law. ***Anderson*,** **477 U.S. at 248;** *Ballance v. City of Springfield, Ill. Police Dep't,* **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger*, **388 F.3d 1015, 1027 (7th Cir. 2004).** A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson*, 477 U.S. at 248. "**A mere scintilla of evidence in support of the nonmoving party's position is not sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Harris N.A. v. Hershey*, **711 F.3d 794, 798 (7th Cir. 2013).** On summary judgment, the district court construes the facts and draws the reasonable inferences in favor of the non-moving party. ***Cole v. Board of Trustees of Northern Illinois University*, 838 F.3d 888, 895 (7th Cir. 2016).**

While generally a district court's role on summary judgment is not to evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter, but only to determine whether a general issue of triable fact exists, a different standard applies to summary judgment on the issue of exhaustion. *Nat'l Athletic Sportwear Inc. v. Westfield Ins. Co.*, **528 F.3d 508, 512 (7th Cir. 2008)**.

A motion for summary judgment based upon failure to exhaust administrative remedies typically requires a hearing to determine any contested issues regarding exhaustion, and the judge may make limited findings of fact at that time. *Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008).** The case may proceed on the merits only after any contested issue of exhaustion is resolved. *Pavey*, **544 F.3d at 742.**

In *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey*, **544 F.3d at 740-41.** Here, Plaintiff has not disputed any of the Wexford Defendants' factual assertions, so no hearing is required.

### B.   Exhaustion under the Prison Litigation Reform Act

Lawsuits brought by prisoners are governed by the PLRA, 42 U.S.C 1997e, which requires that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until … administrative remedies as are available are exhausted." **42 U.S.C. 1997e(a).**

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending. *See Perez v. Wisconsin Department of Corr.*, **182 F.3d 532, 535 (7ᵗʰ Cir. 1999);** *Dixon v. Page*, **291 F.3d 485, 488 (7ᵗʰ Cir. 2002).** If the inmate fails to exhaust before filing suit in federal court, the district court must *dismiss* the suit. *See Jones v. Bock*, **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7ᵗʰ Cir. 2005).**[3]

---

[3]    Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion most often is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* **FED. R. CIV. P. 12(d).**

The law of this Circuit requires strict adherence to the PLRA's exhaustion requirement. "Unless a prisoner completes the administrative process by following rules the state has established for that process, exhaustion has not occurred." *Pozo v. McCaughtry*, **286 F.3d 1022, 1025 (7th Cir. 2002).** This includes the filing of "complaints and appeals in the place, and at the time, the prison's rules require." *Id.* **at 1025.** *See also Dole v. Chandler*, **438 F.3d 804, 809 (7th Cir. 2006) ('This circuit has taken a strict compliance approach to exhaustion").** If the prisoner fails to comply with the established procedures, including time restraints, the court may not consider the claims. *Pavey v. Conley*, **663 F.3d 899, 903 (7th Cir. 2011);** *Jones*, **549 U.S. at 211,** *citing Porter v. Nussell*, **534 U.S. 516, 524 (2002).** But the PLRA's plain language makes clear that an inmate is required to exhaust only those administrative remedies that are available to him. **42 U.S.C. 1997e(a).**

The purpose of the exhaustion requirement is two-fold. First, it gives the prison officials the chance to address the prisoner's claims internally, before any litigation becomes necessary. *Kaba v. Stepp*, **458 F.3d 678, 684 (7th Cir. 2006);** *Woodford v. Ngo*, **548 U.S. 81, 89-90 (2006).** Second, it "seeks to reduce the quantity and improve the quality of prisoner suits." *Porter*, **534 U.S. at 524.** *See also Booth v. Churner*, **532 U.S. 731, 737 (2001) (exhaustion requirement will help "filter out some frivolous claims.").**

Because exhaustion is a prerequisite to filing a suit, a prisoner must wait to commence litigation until he has completed the established process and may not file in anticipation of administrative remedies soon being exhausted. *Perez*, **182 F.3d at 535,**

*citing* **42 U.S.C 1997e(a);** *Ford v. Johnson*, **362 F.3d 395, 398 (7th Cir. 2004).**   A suit filed prior to exhaustion of available remedies will be dismissed even if the remedies become exhausted *while* the suit is pending.   *Perez*, **182 F.3d at 535.**

The affirmative defense of failure to exhaust depends on whether a plaintiff has fulfilled the PLRA's exhaustion requirement, which in turn depends on the prison grievance procedures set forth by the state.   *See Jones*, **549 U.S. at 218.**

### C.   Exhaustion under Illinois Law

In Illinois, the process for exhausting administrative remedies is laid out in the IDOC's Grievance Procedures for Offenders.   **20 Ill. Adm. Code 504.810.**   The procedures first require inmates to speak with their counselor about the issue or problem.   **20 Ill. Admin. Code 504.810(a).**   If unable to resolve a dispute with the counselor, the prisoner may file a written grievance with the Grievance Officer within sixty days of discovery of the dispute.   *Id.*   The grievance should include "factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint…[or] as much descriptive information about the individual as possible."   **20 Ill. Admin. Code 504.810(b).**

The grievance officer shall review the grievance and report findings and recommendations to the Chief Administrative Officer (CAO).   **20 Ill. Adm. Code 504.830(d).**   The prisoner then has the opportunity to review the CAO's response.   *Id.* If the prisoner is unsatisfied with the institution's resolution of the grievance, he may file

an appeal to the Director through the Administrative Review Board within 30 days of the CAO's decision.   **20 Ill. Adm. Code 504.850**.   Completion of this process exhausts a prisoner's administrative remedies.

In emergencies, the Illinois Administrative Code also provides that a prisoner may request his grievance handled on an emergency basis by forwarding the grievance directly to the CAO.   **20 Ill. Adm. Code 504.840**.   The grievance may be handled on an emergency basis if the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm to the offender.   *Id.*   The request to have a grievance handled on an emergency basis may also be appealed to the ARB.   **20 Ill. Adm. Code 504.850**.

IV.   ANALYSIS

In the case at bar, although Defendants concede that Plaintiff exhausted as to Defendant Trost through the August 2014 grievance, they argue that Plaintiff has not exhausted as to Defendant Wexford.   They claim that Plaintiff failed to mention how Wexford violated his rights, and therefore his grievance did not place Menard on notice of his complaints against Wexford.   The Court is not persuaded.

Plaintiff complied with IDOC's specificity requirements as to Wexford.   The level of detail required in a grievance depends on the state's exhaustion requirements, *Jones*, **549 U.S. at 218**, and, as noted above, the State of Illinois requires that a grievance "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who

is otherwise involved in the complaint." **20 Ill. Adm. Code. 504.850**. Plaintiff provided the requisite specificity as to Wexford, in his August 2014 grievance. He specifically listed Wexford in the grievance, and he complained that Wexford and Trost violated his Eighth Amendment rights by acting with deliberate indifference when they denied his request to have cysts surgically removed from his testicles. He alleged that Trost and Wexford were "forcing [him] to live with…constant pain and are refusing to properly treat [his] mass." Plaintiff also provided the specific date of one of the instances he was denied surgery.

Defendants suggest that Plaintiff failed to exhaust as to Wexford because his grievance did not specify that Wexford was engaging in a *policy* or *practice* to deny him care. Defendants' position would obligate Plaintiff to go beyond what the IDOC has mandated inmates do in exhausting their administrative remedies. Defendants would require Plaintiff to tailor his complaints against a particular individual to essentially plead a cause of action against that individual, as if Plaintiff were in federal court. The Illinois Administrative Code does not require such specificity. It merely requires, at its core, "factual details regarding each aspect of the offender's complaint."

"Grievances are intended to give prison administrators an opportunity to address a shortcoming, not to put individual defendants on notice of a lawsuit." *Glick v. Walker*, 385 Fed. App'x 579, 582 (7th Cir. 2010), *citing Jones*, 549 U.S. at 218. *See also Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal

notice to a particular official that he may be sued; the grievance is not a summons and complaint that initiates adversarial litigation.")**.

Plaintiff's August 2014 grievance clearly put Menard officials on notice of an alleged shortcoming on Wexford's part, i.e., that Wexford was denying Plaintiff surgery to remove painful cysts from his testicles.   To put Menard on notice, Plaintiff did not need to specify that Wexford's shortcomings toward him were due to policies or practices. Defendants concede that Plaintiff completed the required procedural steps in regards to the August 2014 grievance, and the Court finds that Plaintiff provided the level of specificity required by the IDOC in the grievance as to Wexford.   Accordingly, the Court finds that Plaintiff exhausted his administrative remedies as to Wexford.

## V.   CONCLUSION

Defendants' motion for summary judgment (Doc. 34) is **GRANTED in part and DENIED in part**.   The motion is granted in that Plaintiff concedes that he has *not* exhausted his administrative remedies as to Defendants Moldenhauer, Shearing and Garcia; the Court **DISMISSES those three Defendants without prejudice.** The motion is denied in that the Court finds Plaintiff *did* exhaust his administrative remedies as to Wexford.   Wexford remains as a Defendant in this suit.

*Plaintiff's claims against Defendants Wexford, Trost, and Lang shall go forward.*

IT IS SO ORDERED.

DATED:   February 21, 2017.

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
United States District Judge