## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JUAN GARCIA,                          )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )     Case No.  15-cv-1369-SCW
                                      )
WEXFORD HEALTH SOURCES, INC.,         )
DR. TROST, and AMY LANG,              )
                                      )
                    Defendants.       )

## MEMORANDUM AND ORDER

**WILLIAMS, Magistrate Judge:**

### I.   INTRODUCTION

Acting *pro se*, Plaintiff Juan Garcia brought the present lawsuit pursuant to 42 U.S.C. § 1983.  An inmate at Menard Correctional Center ("Menard"), Plaintiff alleges Defendants violated his Eighth Amendment rights in regards to treatment of cysts on his testicles.  Plaintiff alleges one count of deliberate indifference to serious medical needs against Defendants Trost and Lang, and a count alleging an unconstitutional policy or practice against Defendant Wexford.  This matter is before the Court on two motions for summary judgment filed by Defendants.  (Docs. 54, 59).  For the reasons stated below, Defendant Lang's Motion is **GRANTED** and Defendants Trost's and Wexford's Motion is **GRANTED in part and DENIED in part**.

### II.  BACKGROUND

Plaintiff Garcia has been an inmate with IDOC since 2007 and has been

incarcerated at Menard since March of the same year.  Defendant Wexford is a company contracted to provide certain medical services to inmates incarcerated by the Illinois Department of Corrections ("IDOC").  Defendant Trost, who is employed by Wexford, was the medical director at Menard from November 2013 to March 2017.  Defendant Lang is a Correctional Medical Technician ("CMT") at Menard.

While incarcerated at Stateville Correctional Center in 2007, Plaintiff noticed cysts near his bilateral testicles.  (Doc. 55-3, p. 4)  He reported the cysts to medical staff and was referred for an ultrasound.  (*Id.*).  The ultrasound revealed epididymal cysts on Plaintiff's testicles—one on his right testicle measuring 1.4 cm and another on his left testicle measuring 1.6 cm.  (Doc. 55-2, p. 2).  Epidydmal cysts are fluid filled cysts in the tube or duct connecting the testicle to the vas deferens located above and behind the testicle.  (*Id.*).  While Defendant Trost contends that such cysts are typically painless, and do not require medical attention, Plaintiff disputes this contention, stating that his cysts are painful.  Plaintiff, however, acknowledges that he did not experience any complaints associated with the cysts until 2009.  (Doc. 55-3, p. 4).  According to Dr. Trost, in rare cases, the cysts are removed when they rapidly increase in size or result in decreased blood flow.  (Doc. 55-2, p. 2).

In 2009, Plaintiff began to experience a burning feeling in his bilateral testicles, which he rated at a five out of ten.  (Doc. 55-3, p. 4).  He submitted a sick call request and was referred for another ultrasound.  (*Id.*).  The ultrasound was performed on August 17, 2009, and it revealed the small bilateral epididymal cysts consistent in size

as previously documented. (Doc. 55-2, p. 2). Defendant Trost first evaluated Plaintiff on May 31, 2013 for complaints of right shoulder pain and prescribed Ibuprofen. (*Id.*). While Defendant maintains that Plaintiff did not complain of testicular pain during this visit, Plaintiff contends that he was not allowed to complain since his visit was for shoulder pain. (Doc. 55-2, p. 2; Doc. 62, p. 7). According to Plaintiff, inmates are not allowed to complain about issues other than the ones for which they are scheduled to visit the doctor. (Doc. 62, p. 7). He testified at his deposition that he had previously tried to bring up another medical issue during a visit, but "they wouldn't allow you to do that." (Doc. 55-3, p. 10). Plaintiff did not provide any further specifics or detail other than to say that such prohibitions were given orally and applied to all healthcare visits. (*Id.*).

Plaintiff indicates that he has been in constant pain from his testicles since August 2013. (Doc. 62, p. 11). Plaintiff presented to Defendant Lang, a Correctional Medical Technician, on September 29, 2013, complaining of testicular pain at a level of six or seven out of ten with swelling for the previous two and a half months. (Doc. 55-3, p. 10). According to Defendant Lang, she was not able to visualize any gross swelling or enlargement. (Doc. 60-3, p. 2). She referred Plaintiff to see a nurse practitioner or doctor, and Plaintiff was seen by a nurse practitioner a week later. (*Id;* Doc. 60-1, p. 15). Defendant Lang has no control over scheduling patients' visit, and is not responsible for doing so. (Doc. 60-3, p. 3). According to Plaintiff, he requested pain medication from Defendant Lang; she refused, and walked away from his cell. (Doc. 62, p. 7). Defendant

Lang does not recall if Plaintiff requested ibuprofen or pain medication from her during this visit. (Doc. 60-3, p. 2). She is only able to prescribe medication listed on the IDOC protocol sheet. (*Id.*). Regardless, according to Defendant Lang, based on the protocol sheets and her medical training and judgment, Plaintiff's condition did not warrant pain medication at that time. (*Id.*). She instructed Plaintiff to inform the healthcare unit if the severity of his pain increased. (*Id.*).

Plaintiff was evaluated by a non-party nurse practitioner at Menard on October 7, 2013. He reported complaints of testicular pain, and that twice in the past he had experienced pain with urination and penile discharge. (Doc. 62-, p. 7 – 8). The nurse practitioner noted cysts on Plaintiff's testicles that were consistent with the 2007 ultrasound. (Doc. 55-2, p. 3) The NP's assessment was that of testicular pain with a possible urinary tract infection, and the NP ordered a urinal analysis and culture and sensitivity for further diagnosis. (*Id.*). Plaintiff was also prescribed Bactrim, an antibiotic, and recommended Plaintiff increase his fluids and return for reevaluation in two weeks. (*Id.*).

Plaintiff was seen by the non-party NP again on October 21, 2013. (*Id.*). He was diagnosed with testicular pain and was referred for an evaluation with a medical doctor. (*Id.*). Plaintiff was seen by a non-party doctor on October 31, who, upon finding Plaintiff's cysts to be consistent with the 2007 and 2009 ultrasounds, diagnosed Plaintiff with stable bilateral epididymal cysts. (*Id.* at 3 – 4). Plaintiff presented to nurse sick call on December 14, 2013 for complaints of testicular pain, but was not evaluated due to a

dispute over a $5.00 copay.  (*Id.* at 4; Doc. 62, p. 8).

Plaintiff presented to nurse sick call on April 25, 2014, where he was evaluated by a non-party nurse for complaints of occasional testicular pain over the prior weeks, which he rated at a nine out of ten.  (Doc. 55-2, p. 4).  He was referred for an evaluation with a nurse practitioner or a doctor.  (*Id.*).  Plaintiff was seen by Dr. Trost on May 23, 2014 with complaints of bilateral testicular pain, and Plaintiff was again diagnosed with bilateral epididymal cysts.  (*Id.*).  While both Dr. Trost and the medical record indicate that Plaintiff was prescribed Ibuprofen, Plaintiff denies ever receiving Ibuprofen.  (*Id*; Doc. 55-1, p. 11 – 12; Doc. 55-3, p. 17).  According to Plaintiff, he requested pain medication during the May 23rd visit, and Dr. Trost stated that he would send Plaintiff some medication that would be delivered to Plaintiff's cell.  (Doc. 62, p. 15).  Plaintiff never received any medication, however.  (*Id.*).  He Indicates that nurses pass out the medication, and at that time, the inmates are required to sign a medication form to prove reception.  (*Id.*).  Plaintiff never signed such a form.  (*Id.*).

Plaintiff was next seen by a non-party NP on July 1, 2014 who identified bilateral epididymal cysts with complaints of tenderness upon palpation. (Doc. 55-2, p. 4).  Dr. Trost indicates that the NP renewed the ibuprofen prescription, but this notion is disputed by Plaintiff.  (*Id;* Doc. 62, p. 9).

Plaintiff was seen again by Dr. Trost on July 18, 2014.  During that visit, Plaintiff reported ongoing testicular pain without improvement, and he requested to have his cysts surgically removed and to see a urologist.  (Doc. 55-2, p. 5).  Dr. Trost submitted

Plaintiff to collegial for consideration for a bilateral orchiectomy, which is the surgical removal of both testicles. (*Id.*). According to the referral record, this was done per Plaintiff's request. (Doc. 551, p. 17). According to Plaintiff, however, he did not request an orchiectomy; rather, he sought only the surgical removal of both cysts. (Doc. 62, p. 9). Regardless of whether Plaintiff requested an orchiectomy, Dr. Trost's referral was denied as it was determined that the cysts could be effectively managed on-site and that an orchiectomy was not medically necessary. (Doc. 55-2, p. 5).

Dr. Trost saw Plaintiff on two occasions in August 2014 for unrelated issues. (*Id.*). Plaintiff presented to Dr. Trost again on October 7, 2014, again complaining of testicular pain. (Doc. 55-2, p. 5). Dr. Trost referred Plaintiff for an updated ultrasound. (*Id.*). The ultrasound revealed a 1.28 x 1.58 cm cyst on Plaintiff's right testicle and a 1.7 cm cyst on the left testicle, and otherwise normal testicles that were consistent with the prior studies. (*Id.*). Plaintiff does not dispute that the size of the cysts remained relatively unchanged from the 2007 and 2009 ultrasounds. (Doc. 55, p. 7; Doc. 62, p. 10).

### III.    SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. The rule states that summary judgment is appropriate only if the admissible evidence considered as a whole shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. ***Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED.R.CIV.P. 56(a))**. The party seeking summary judgment bears the initial burden of demonstrating – based on the pleadings,

affidavits and/or information obtained via discovery – the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986)**. A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986)**. *Accord Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676 (7th Cir. 2014)**.

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012)**; *Righi v. SMC Corp.*, **632 F.3d 404, 408 (7th Cir. 2011)**; *Delapaz v. Richardson*, **634 F.3d 895, 899 (7th Cir. 2011)**. As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, **756 F.3d 542 (7th Cir. 2014)**.

IV. **ANALYSIS**

The Court first addresses Plaintiff's Eighth Amendment claims against Lang and Trost. Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, **414 F.3d 645, 652–53 (7th Cir. 2005) (quoting** *Estelle v. Gamble*, **429 U.S. 97, 104 (1976) (internal quotation marks omitted)).** *Accord Rodriguez v. Plymouth Ambulance Serv.*, **577 F.3d 816, 828 (7th Cir. 2009) ("Deliberate**

indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution.")**. A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Holloway v. Delaware Cnty. Sheriff*, **700 F.3d 1063, 1074 (7th Cir. 2012) (stating that a prison doctor "is free to make his own, independent medical determination as to the necessity of certain treatments or medications, so long as the determination is based on the physician's professional judgment and does not go against accepted professional standards");** *Forbes v. Edgar*, **112 F.3d 262, 267 (7th Cir. 1997).** Although a prison official may not continue a course of treatment he knows is blatantly ineffective, prisoners are not entitled to receive unqualified access to healthcare. *See Holloway*, **700 F.3d at 1073-74**. A doctor may provide the care he feels is reasonable so long as it falls within a "range of acceptable courses based on prevailing standards in the field." *Id.* **at 1073**.

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally-deficient medical care must satisfy a two-part test. *Arnett v. Webster*, **658 F.3d 742, 750 (7th Cir. 2011).** The first prong is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, **658 F.3d at 750.** *Accord Greeno*, **414 F.3d at 653.** A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, **593 F.3d 610, 620 (7th Cir. 2010).** *Accord Farmer v. Brennan*, **511 U.S. 825, 828 (1994) (violating the** *Eighth*

*Amendment* **requires "deliberate indifference to a** *substantial* **risk of** *serious* **harm.")** **(internal quotation marks omitted) (emphasis added).** Only if the objective prong is satisfied is it necessary to analyze the second, subjective prong, which focuses on whether a defendant's state of mind was sufficiently culpable. *Greeno*, **414 F.3d at 652-53**.

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of — and then disregards — an excessive risk to inmate health. *Greeno*, **414 F.3d at 653.** The plaintiff need not show the defendant literally ignored his complaint, just that the defendant was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, **546 F.3d 516, 524 (7th Cir. 2008).** Deliberate indifference is not negligence; rather it is more akin to intentional wrongdoing. *McGee v. Adams*, **721 F.3d 474, 480 (7th Cir. 2013).** The standard is criminal recklessness, and even gross negligence will not meet this standard. *Id.* **at 481**.

Plaintiff cannot recover against Defendant Lang. On the September 29th encounter at issue, Defendant Lang examined Plaintiff, did not see any gross swelling or enlargement, and referred Plaintiff to a NP or doctor. Rather than ignore a serious medical need, Defendant Lang did her job and examined Plaintiff and issued a referral. Even assuming that Plaintiff requested medication from Lang, her refusal to provide pain medication is not sufficient for a finding of deliberate indifference. Rather, based on her medical judgment and the IDOC protocol sheets, after examining Plaintiff,

Defendant Lang determined that Plaintiff's condition did not warrant pain medication. It cannot be that every single time an inmate is denied pain medication, the denying medical professional can be held liable for deliberate indifference. A medical professional who makes a treatment decision that is an exercise of accepted professional judgment is not deliberately indifferent. *See Petties v. Carter*, **836 F.3d 722, 729 (7th Cir. 2016);** *Norfleet v. Webster*, **439 F.3d 392, 396 (7th Cir. 2006)**. There is not sufficient evidence to suggest Defendant Lang acted not in accordance with her medical judgment. Based on the record before it, the Court finds that a jury could only reasonably conclude that Defendant Lang exercised her medical judgment in her care of Plaintiff, and was not deliberately indifferent.

Turning now to Dr. Trost, Plaintiff's first visit with him was in regards to shoulder pain. According to Plaintiff, he could not raise complaints to Dr. Trost regarding his testicle pain during this visit due to a policy prohibiting inmates from raising other medical issues during a visit. Assuming this policy existed, there is no evidence to suggest that Plaintiff even attempted to raise the issue of his testicular pain during this visit, and nor has Plaintiff provided any evidence demonstrating that he was previously prohibited from raising other medical issues during visits with Dr. Trost, specifically. Plaintiff's vague statement that he had previously been prevented from raising other medical issues, without indicating the number of times he had been prohibited, or who he saw during these times, is insufficient to allow a jury to find that there existed a widespread policy or practice. Since there is no evidence that Dr. Trost

had previously disallowed Plaintiff from raising other medical issues during visits, there is no evidence that Dr. Trost, specifically, followed such a rule. Therefore, there is not sufficient evidence to allow a jury to conclude that it would have been reasonable for Plaintiff to have expected to have been prohibited by Dr. Trost from complaining about testicular pain when Plaintiff was seeing Dr. Trost for other matters. As such, during visits for other matters, including the first visit on August 17, 2009, Dr. Trost cannot be said to have actual knowledge of any then-existing testicular pain from which Plaintiff may have been suffering.

Dr. Trost also provided adequate care during the May 23, 2014 visit. During that visit, Plaintiff requested pain medication, and, by Plaintiff's own admission, Dr. Trost agreed to provide the medication. Dr. Trost indicated during the visit that he would have it delivered to his cell. Now, Dr. Trost still indicates that he prescribed Ibrupofen; however, because he never received the medication, Plaintiff disputes that the prescription was made. Simply because Plaintiff did not receive the medication, does not mean it was not prescribed, however. It may simply have not been properly issued by the nursing staff, or there may have been an issue somewhere else down the line from the doctor. There is no evidence to indicate that Plaintiff's failure to receive pain medication was Dr. Trost's fault. Plaintiff admits that Dr. Trost stated he would have pain medication sent to him. Dr. Trost and the medical records indicate that Ibuprofen was prescribed. The record indicates, at the very least, that it was Dr. Trost's intention to provide Plaintiff with pain killers after the May 23, 2014 visit, and there is no

evidence to allow a jury to reasonably conclude that he was deliberately indifferent during this visit.

For the remainder of Dr. Trost's treatment of Plaintiff, however, a jury could infer he acted with deliberate indifference. Dr. Trost next saw Plaintiff on July 18, 2014, and after which, Dr. Trost indicates he referred Plaintiff for an orchiectomy per Plaintiff's request. Plaintiff disputes that he requested an orchiectomy, and simply wanted the cysts themselves surgically removed. The face of the referral record indicates that Dr. Trost was under the belief that Plaintiff had requested the orchiectomy. Plaintiff's denial that he requested the procedure casts doubt on Dr. Trost's claim, however. Further, it is concerning, regardless of whether Plaintiff requested it, that Dr. Trost would seek a referral to have Plaintiff castrated due to what Dr. Trost himself contends are painless cysts that do not require medical treatment.[1] One does not have to be a medical expert to be struck by the, to put it one way, disproportionate treatment recommendation.

There is no indication in the record that would indicate a bilateral orchiectomy was an appropriate course of treatment for Plaintiff's condition, and such a suggestion not only belies common sense but is also inconsistent with Dr. Trost's own description of epididymal cysts. In his affidavit in support of his motion, Dr. Trost indicates that in rare instances "the *cysts* are removed." (Doc. 55-2, p. 2) (emphasis added). In addition, in describing epididymal cysts, Dr. Trost cited to an article from WebMD. (Doc. 55, p.

---

[1] Fortunately for Plaintiff the referral was denied. Otherwise, we would have a very different case before the Court.

3).    The article states that "If the spermatocele, [the cyst], gets larger or causes discomfort, a procedure to remove the spermatocele (spermatocelectomy) may be needed." *See* **WebMD, S**PERMATOCELE **(E**PIDIDYMAL CYST**) –** TOPIC OVERVIEW **https://www.webmd.com/men/tc/spermatocele-epididymal-cyst-topic-overview  (Last Accessed Mar. 20, 2018)**.  The Mayo Clinic describes a spermatocelectomy as a surgical procedure where the cyst is removed from the epididymis through an incision in the scrotum.[2]    *See* **Mayo Clinic, S**PERMATOCELE**, Diagnosis & treatment https://www.mayoclinic.org/diseases-conditions/spermatocele/diagnosis-treatment/drc-20377833 (Last Accessed Mar. 20, 2018).**  Neither Dr. Trost's affidavit nor the medical article to which he cited indicates that an orchiectomy is an appropriate course of treatment for an epididymal cyst.

If Dr. Trost had issued the referral for an orchiectomy under the honest belief that Plaintiff requested it, then he may have been "merely" negligent.  The sheer disproportionality of the procedure compared to the ailment, as evidenced by Dr. Trost's evidence and general common sense, however, allows a jury to reasonably infer that Dr. Trost issued the orchiectomy referral out of spite, frustration, or some reason other than because of his professional medical judgment.  There is therefore sufficient evidence in the record for a jury to find that Dr. Trost was deliberately indifferent to Plaintiff's serious medical needs during the July 18, 2017 visit.

A jury could also find that this deliberate indifference extended after the visit

---

[2] Quite a far less drastic procedure compared to wholesale castration.

resulting in a referral. After referring Plaintiff to have his testicles removed, the only action taken by Dr. Trost was to order another ultrasound. Given Dr. Trost's conduct on July 18th, and given that Plaintiff had been in constant pain since August 2013, a jury could find that from July 18, 2014 and onward, Dr. Trost was engaging in a course of treatment he knew to be ineffective. As such, summary judgment is not appropriate as to Plaintiff's claims against Dr. Trost from July 18, 2014 going forward.

Finally, the Court turns to Plaintiff's claims against Defendant Wexford. The doctrine of *respondeat superior* does not apply in § 1983 cases, including as against corporate defendants. ***Shields v. Illinois Dept. of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014) (citing *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982))**. In ***Monell v. Dept. of Social Services of the City of New York*,** however, the Supreme Court held that a municipality may be liable under § 1983 for constitutional violations resulting from a policy or custom of the municipality, **436 U.S. 658, 690 – 91 (1978)**. The Seventh Circuit has extended *Monell* beyond municipalities to include private corporations providing government services, such as Wexford. ***See Shields*, 746 F.3d at 789**. A corporation that has contracted to provide essential government services may be held liable under § 1983 for constitutional violations caused by unconstitutional policies or customs. ***Id.***

Plaintiff cannot recover from Defendant Wexford on his *Monell* claim. For the reasons already discussed, Plaintiff cannot demonstrate a policy of a rule against inmates raising other medical issues during sick calls, and, therefore, Plaintiff cannot

hold Wexford liable for such an alleged policy.[3]  Though a jury could find Dr. Trost liable for deliberate indifference for a certain period of time, there is no evidence in the record to demonstrate that Dr. Trost's actions were part of any policy or custom instituted or condoned by Wexford.  Plaintiff argues that the failure to refer him to a urologist was contrary to Wexford's guidelines (which are not in the record).  The only referral to be approved by Wexford, however, was for the orchiectomy, which the Court is confident that Plaintiff is pleased was denied.  There is simply no evidence of any Wexford policy or customs relating to Dr. Trost's deliberate indifference.   Additionally, since Plaintiff cannot demonstrate any other individual deliberate indifference, he cannot recover against Wexford on the grounds of an unconstitutional policy or practice.  *See Pyles v. Fahim*, **771 F.3d 403, 412 (7th Cir. 2014) (citing** *City of Los Angeles v. Heller*, **475 U.S. 796, 799 (1986))**.

## V.   CONCLUSION

Because the record fails to demonstrate facts allowing a jury to reasonably infer deliberate indifference on the part of Defendant Lang, her motion for summary judgment (Doc. 59) is **GRANTED**.   Plaintiff's claims against Defendant Lang are **DISMISSED with prejudice**.   A jury could find, however, that Defendant Trost was deliberately indifferent in his treatment of Plaintiff from July 18, 2014 forward. Defendant Trost's and Wexford's motion for summary judgment (Doc. 54) is therefore **GRANTED in part and DENIED in part**.  Plaintiff's claims against Defendant Wexford

---

[3] In addition, a single dispute regarding a co-pay during one visit is also not indicative of any kind of unconstitutional policy.

and against Defendant Trost for his treatment prior to July 18, 2014 are **DISMISSED**

**with prejudice**.  Plaintiff's claims against Defendant Trost for his treatment on July 18,

2014 onward shall go forward.   The Clerk of Court shall enter judgment according at

the close of the case.

   **IT IS SO ORDERED**.
DATED: 3/20/2018

          */s/ Stephen C. Williams*
          STEPHEN C. WILLIAMS
          United States Magistrate Judge